CITY OF CINCINNATI *v.*
CONTEMPORARY ARTS CENTER.

CITY OF CINCINNATI *v.* BARRIE.

(Nos. 90CRB11699-A & B and
90CRB11700-A & B—Decided
June 19, 1990.)

Hamilton County Municipal Court.

*Richard A. Castellini,* city
solicitor, *Frank H. Prouty, Jr.,* senior
assistant city prosecutor, and *Melanie
J. Reising,* assistant city prosecutor,
for the state of Ohio.

*Marc D. Mezibov,* for Contemporary Arts Center.

*H. Louis Sirkin,* for Dennis Barrie.

F. DAVID J. ALBANESE, J. For purposes of these decisions the court has
consolidated the indictments charging
the Contemporary Arts Center, an
Ohio corporation not for profit
("CAC"), and Dennis Barrie ("Barrie"), with violating R.C. 2907.323(A)
(3) and 2907.32(A)(2).[1] These charges
result from the public display at the
CAC as supervised by the CAC's Director, Barrie, of the exhibit entitled:
"Robert Mapplethorpe: Perfect Moment." The deceased Robert Mapplethorpe was a photographer concentrating in certain areas of work, a collection of which included approximately one hundred seventy-five photo-

___

[1] R.C. 2907.323(A)(3) provides:
"No person shall do any of the following:
"* * *

"(3) Possess * * * any material * * *
that shows a minor * * * in a state of nudity
* * * ."
R.C. 2907.32(A)(2) provides:
"No person * * * shall do any of the
following:
"* * *
"(2) Promote * * *, display * * * or
exhibit * * * any obscene material * * *."

graphic prints exhibited at the CAC. Before the public opening of the exhibition the community was cognizant, through the Cincinnati media, of allegations of obscenity concerning the Mapplethorpe exhibition.

Eventually the CAC and other interested parties filed an action for declaratory judgment on March 27, 1990 in the Hamilton County Municipal Court seeking a determination of whether the Mapplethorpe exhibition was obscene.

Subsequently, on April 6, 1990, that civil remedy for prior judicial opinion was dismissed in the Hamilton County Municipal Court. On April 7, 1990, the Hamilton County Grand Jury convened and returned the indictments against the CAC and Barrie, the defendants herein.

The misdemeanor indictment was remanded by the Court of Common Pleas to the Hamilton County Municipal Court for trial and was assigned to this court. Pursuant to Crim. R. 16, various motions for discovery were filed in addition to a request to the common pleas court for release of the transcript of the grand jury proceedings. The judge in the common pleas court found the request for the grand jury transcript was not appropriate and dismissed the motion.

In addition, numerous pretrial motions from the state and defense have been filed with this court. The motions include the following:

1. Defendants' Motions
(a) Dismiss the indictment for lack of probable cause
(b) Dismiss the indictment for selective prosecution
(c) Suppress the search warrant
(d) Dismiss the indictment—grand jury
(e) Dismiss count one—affirmative defense
(f) Dismiss count two—affirmative defense
(g) View the scene

2. State's Motions
(a) *In limine*
The court has heard the arguments of counsel and reviewed briefs of the parties and will state decisions as they apply separately to the motions filed.

I

The defendants jointly move the court to dismiss the indictments for failure to state offenses pursuant to Ohio law. The court previously has granted the state's motion to amend the indictments regarding Counts One and Two as against both defendants. The court has permitted the amendments pursuant to Crim. R. 7(D) to reflect the following language:

"FIRST COUNT

"The Grand Jurors of the County of Hamilton, in the name and by authority of the State of Ohio, upon their oaths do find and present that The Contemporary Arts Center and Dennis Barrie on or about the 7th day of April in the year Nineteen Hundred and Ninety at the County of Hamilton and State of Ohio aforesaid, did possess the following materials: a photograph of a minor male child, under age 18, with a lewd exhibition or graphic focus on the genitals and a photograph of a minor female child, under age 18, with a lewd exhibition or graphic focus on the genitals either or both of whom are in a state of nudity, and neither of whom are [*sic*] the ward or child of The Contemporary Arts Center nor the ward or child of Dennis Barrie, in violation of Section 2907.32.3(A) of the Ohio Revised Code and against the peace and dignity of the State of Ohio.

"SECOND COUNT

"The Grand Jurors of the County of Hamilton, in the name and by authority of the State of Ohio, upon their oaths do find and present that The Contemporary Arts Center and

Dennis Barrie, on or about the 7th day of April in the year Nineteen Hundred and Ninety at the County of Hamilton and State of Ohio aforesaid, did, with knowledge of the character of the material involved, publicly display or exhibit the following material: a photograph depicting the forearm and hand of one person inserted into the anus of another, a photograph of a finger inserted into a penis, a photograph of a cylindrical object being inserted into an anus, a photograph of a man urinating into the mouth of another man, and a photograph of a man with a whip inserted in his anus, any one or all of which are obscene as defined by the three prong requirement established in *Miller* v. *California,* 413 U.S. 15 (1973) and Ohio Revised Code Section 2907.01(F), in violation of Section 2907.32(A)(2) of the Ohio Revised Code and against the peace and dignity of the State of Ohio."

As amended, the court believes that the indictments do state charges against the defendants that conform with the mandates of Crim. R. 7(B). The request by the defendants on this issue is overruled.

Also at issue is the defendants' claim that the grand jury was not properly instructed by the prosecuting attorney on pertinent issues of obscenity law. Previously the defendants filed an application in the Court of Common Pleas of Hamilton County requesting a release of the grand jury transcript. A determination was made by the court at that hearing that "[t]here is nothing in there which would show anything irregular or any abuse." The court overruled the request by the defendants to view the grand jury transcript of proceedings. Obviously, the prosecuting attorney may be present from time to time while the grand jury is in session and, pursuant to Crim. R. 7(B), the indictment must be signed by the prosecutor and "* * * shall contain a state-ment that the accused has committed some public offense therein specified * * *." In the ordinary course of business there is communication between the grand jury and the prosecutor regarding the nature of the charges and the witnesses who will testify. Such communication is entirely proper. Further, there is nothing before this court to conclude that proper instructions were not given to the grand jury regarding the legal guidelines of obscenity law. See *State* v. *Loshin* (1986), 34 Ohio App. 3d 62, 517 N.E. 2d 229. Additionally, "[a] grand jury need not be convinced beyond a reasonable doubt that a defendant is guilty * * *" to return an indictment. *United States* v. *Slepicoff* (C.A. 5, 1975), 524 F. 2d 1244; see, also, *Costello* v. *United States* (1956), 350 U.S. 359. Whether or not the grand jury was properly instructed is academic at this point since the court finds that the indictment as amended is valid on its face and meets the requirements of R.C. 2941.03. See, also, *United States* v. *Battista* (C.A. 6, 1981), 646 F. 2d 237, certiorari denied (1981), 454 U.S. 1046. The defendants' motion to dismiss for improper grand jury instructions is overruled.

Finally, the defendants argue that the indictments should be dismissed because there was no independent judicial determination of probable cause. There is no such requirement in Ohio. *State* v. *Loshin, supra.* The record discloses that the grand jurors themselves viewed the exhibits as they were shown at CAC; this was before the grand jury voted to return the indictment in this case. Certainly it is proper for members of the grand jury to themselves view the photographs as arranged in the exhibit. *Maryland* v. *Macon* (1985), 472 U.S. 463; *State* v. *Loshin, supra.* No one denies that the grand jury is an independent body as provided by the statutes and Rules of Criminal Procedure in Ohio. As stated

in the case of *State* v. *Woolard* (C.P. 1910), 22 Ohio Dec. 652, 656, "* * *[w]e must not forget that grand juries may return indictments based wholly upon facts within their own knowledge, and to support which not a single witness has been called or sworn." See, also, *Turk* v. *State* (1836), 7 Ohio, Part II, 240. Grand juries may also return indictments based on illegally seized evidence, or on otherwise inadmissible evidence. *United States* v. *Colandra* (1974), 414 U.S. 338. Also, the record establishes that there was no seizure of evidence by the state or law enforcement agencies in violation of any potential First Amendment rights, and "[u]nder Ohio's criminal procedure, there is no provision for a motion to dismiss a criminal case founded on the lack of probable cause. The determination of whether or not probable cause exists is the very function of the trial. * * *" *State* v. *Hartley* (1988), 51 Ohio App. 3d 47, 48, 554 N.E. 2d 950, 951, motion for leave to appeal overruled (1989), 41 Ohio St. 3d 705, 534 N.E. 2d 1211. For the foregoing reasons, the court hereby overrules the defendants' motion to dismiss for lack of probable cause.

## II

The defendants jointly move for a hearing to present evidence in support of a motion to dismiss based on selective prosecution.

It has been conceded that this case appears to be the first attempt to prosecute an art museum or art gallery under an obscenity statute either in the state of Ohio or in the United States. CAC was originally incorporated not for profit under the name of the Cincinnati Modern Art Society in the year 1940. The purposes in the Articles of Incorporation clearly indicate that this society is *not* designated as an "art museum" as defined under R.C. 1743.10; the articles do not state that the "corporation [was] organized for constructing and conducting a museum for the exhibition and preservation of works of nature and art * * * ." The CAC in this case is more aptly defined as a "gallery," according to Webster's Third New International Dictionary (1961) 930, which states in part that a "gallery" is "a room, series of rooms, wide corridor, or building devoted to the exhibition of works of art[.]" This court had an opportunity, with the agreement of counsel and the parties herein, to view the premises of CAC and concurs in the characterization of CAC as an art gallery.

It is undisputed that this art gallery was the only location in the city of Cincinnati to display, at the cost of an admission fee, Robert Mapplethorpe's controversial photographs in this case. It is not denied that the Cincinnati authorities were aware that the Mapplethorpe exhibit was to be shown on certain dates. The defendants knowingly prepared, advertised and proceeded with the "show" notwithstanding the dialogue between law enforcement agencies and the art community, CAC and Barrie. It can be stated that the defendants have endured some extreme pressure brought about to some extent by their own doing.

In addition, it has never been claimed by the defendants that they were unconstitutionally denied the right to display the challenging photographic images of the Mapplethorpe exhibit to the public. On the contrary, approximately eighty thousand people were claimed by the CAC and Barrie to have viewed the exhibit.

Knowing full well that law enforcement authorities believed that certain photographs in the exhibit could provide probable cause to prosecute the defendants under R.C. 2907.32 and 2907.323(A)(3)(a), the defendants also must have known that a confrontation was inevitable.

It is well-documented that a con-

scious exercise of some selectivity in enforcing the law does not itself violate the United States Constitution. See *Oyler* v. *Boles* (1962), 368 U.S. 448, 456. There is nothing to indicate to the court that this investigatorial process arose from *unconstitutional* activities of law enforcement. See *State* v. *Martin* (Tenn. 1986), 719 S.W. 2d 522, 525.

Next, the defendants argue that they have statutory exclusion from prosecution because "legitimate museums cannot and do not pander obscenity." It is well-settled law in Ohio that persons claiming an affirmative defense must meet a burden of proof as established by a preponderance of evidence.

Certainly the defendants do not dispute that they and/or their representatives and/or supporters have had many opportunities to discuss in the news media their various defenses of the events surrounding the exhibition.

The defendants argue additionally that threats were made that compelled the defendants to file suit in federal court and seek injunctive relief against any "further action." The federal court did grant a preliminary injunction prohibiting the authorities from seizing any of the photographs; however, CAC and Barrie were also ordered to "forthwith make available to * * * [authorities] a complete set of exact photographs of all items currently on display in the Mapplethorpe Exhibit." The court also ordered CAC and Barrie to post a bond of $100. Therefore, it appears the parties had a reasonable disagreement at the time and it was resolved by the court.

Next, the defendants claim the authorities acted in bad faith in prosecuting them for violations of R.C. 2907.32 and 2907.323(A)(3) because of the authorities' unconstitutional desire to appease "a vocal minority of the public." This argument certainly is not consistent with the defendants' own presentation of a so-called recent poll by the University of Cincinnati showing that fifty-nine percent of Hamilton County residents were in favor of permitting exhibition of the photographs.[2] What is left unsaid is that a significant forty-one percent of the population did not approve of permitting the showing of the photographs; this certainly does not support a finding of improper prosecutorial interference or bad faith.

In the final analysis, it is apparent that the authorities had a " '*bona fide* rational pattern of general enforcement, in the expectation that general compliance will follow and * * * further prosecutions * * * [would] be unnecessary.* * *' " *State* v. *Flynt* (1980), 63 Ohio St. 2d 132, 135, 17 O.O. 3d 81, 83, 407 N.E. 2d 15, 17, fn. 1. The defendants' request for an evidentiary hearing on selective prosecution is denied.

### III

The defendants jointly move to suppress any and all evidence of photographs videotaped in this cause pursuant to a search warrant, alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution. At the oral arguments on this motion, the defendants submitted a copy of the search warrant and affidavit for search warrant filed with this court. The search warrant was signed by Melba D. Marsh, Judge of the Hamilton County Municipal Court, on April 7, 1990. First of all, this court takes judicial notice that Judge Marsh is duly authorized and empowered as a judge of this court. This court also recognizes that Judge Marsh was on duty and available to sign search warrants on that date.

The defendants argue that search warrants involving First Amendment

_____

[2] The state, at argument, did not comment on the validity or results of the poll.

rights cannot be issued only on "the conclusory assertions of a single police officer * * *'" but instead must be obtained by affidavit stating specific facts in order that the issuing magistrate may "focus searchingly on the question of obscenity." *Marcus* v. *Search Warrant* (1961), 367 U.S. 717, 732. But, in reviewing the affidavit for the search warrant, this court concludes that Judge Marsh had a " 'substantial basis for * * * conclud[ing] * * * that probable cause existed.' " *New York* v. *P.J. Video, Inc.* (1986), 475 U.S. 868, 876.

The defendants argue that Judge Marsh was biased and not independent. This argument is not substantiated by any supporting facts. In addition, Crim. R. 41 simply states that:

"(A) A search warrant authorized by this rule may be issued by a judge of a court of record to search and seize property located within the court's territorial jurisdiction, upon the request of a prosecuting attorney or a law enforcement officer.

"* * *

"(C) A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant * * *."

This court believes that *any* judge on the Hamilton County Municipal Court at *any* time, under the proper procedures, can and should authorize the issuance of a search warrant; "judge shopping" simply does not exist in this cause.

Interestingly enough, this court should not, in reviewing the magistrate's decision, conduct a *de novo* determination on the sufficiency of probable cause supporting the search warrant. As stated in *State* v. *George* (1989), 45 Ohio St. 3d 325, 544 N.E. 2d 640:

"In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. (*Illinois* v. *Gates* [1983], 462 U.S. 213, 238-239, followed.)"[3] *Id.* at paragraph one of the syllabus.

In addition, the defendants concede that there was *no* seizure of actual properties or photographs removed from the premises of the CAC. Even though the defendants argue that there was a "constructive" seizure (videotapes of the photographs on the premises), this court will not disturb the search warrant on that basis. See *Heller* v. *New York* (1973), 413 U.S. 483, 487; *Roaden* v. *Kentucky* (1973), 413 U.S. 496. And, according to the record herein, the defendants were indicted on the charges herein *before* the search warrant was returned. The members of the issuing grand jury actually viewed the exhibition as it existed for display to the public; an indictment followed pursuant to proper procedures. See *State* v. *Woolard, supra,* at 656. The evidence was videotaped in order to *"preserve it as evidence."* (Emphasis *sic.*) *Heller, supra,* at 490. Also, the district court

---

[3] See, also, the cases holding that search warrants in obscenity cases do not require the application of a higher standard of probable cause. *New York* v. *P.J. Video, Inc., supra,* at 868; *People* v. *Sequoia Books, Inc.* (Ill. App. 1986), 495 N.E. 2d 1292.

in the order of April 9, 1990 preserved copies of the photographs for evidence.

Appropriately, then, the defendants' motion to suppress any and all evidence of the photographs is denied.

IV

The defendants jointly request a dismissal of Count One of the indictment pursuant to R.C. 2907.323(A). This section states in part:

"(A) No person shall do any of the following:

"* * *

"(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity* * *."

The court finds that serious questions of fact are present that cannot be decided on constitutional grounds alone. The defendants argue that the photographs of the minors "do not contain lewd exhibitions or involve a graphic focus on the genitals." In the next assertion, the defendants claim that the photographs "are instead nude portraits of children commissioned by their parents * * *."

This argument combines facts, affirmative defenses and issues of credibility concurrently. This court will not pre-try the case in pretrial motions. See *State* v. *McNamee* (1984), 17 Ohio App. 3d 175, 17 OBR 306, 478 N.E. 2d 843. The burden of proof for an affirmative defense rests with the defendant. R.C. 2901.05(A).

The defendants argue for pretrial dismissal because of affidavits filed from the parents of the minor children consenting to possession and displaying of the photographs. Again, this is asserted as an affirmative defense to be offered at trial by the defendants. See *id.*

Finally, the defendants argue that R.C. 2907.323 is unconstitutionally vague and overbroad. This very issue was recently decided in *Osborne* v. *Ohio* (1990), 495 U.S. ___, ___, 109 L. Ed. 2d 98, 112, 110 S. Ct. 1691, 1698, fn. 10, affirming the Supreme Court of Ohio:

"* * *[T]he only conduct prohibited by the statute [R.C. 2907.323 (A)(3)(a) and (b)] is conduct which is *not* morally innocent * * *. [T]he statute's proscription is not so broad as to outlaw all depictions of minors in a state of nudity, but rather *only* those depictions which constitute child pornography." (Emphasis added in part.) *Id.*, quoting *State* v. *Young* (1988), 37 Ohio St. 3d 249, 251-252, 525 N.E. 2d 1363, 1367-1368.

For the foregoing reasons, the defendants' motion to dismiss Count One is denied.

V

The defendants' motion to dismiss the second count of the indictments and the state's motion *in limine* will be decided at a separate hearing.

*So ordered.*