[Cite as *State v. Cassel*, 2016-Ohio-3479.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26708 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 14-CR-2763 |
| v. | : | |
| | : | (Criminal Appeal from |
| TERRY R. CASSEL | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 17th day of June, 2016.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

TERRY L. LEWIS, Atty. Reg. No. 0010324, Terry L. Lewis Co., L.P.A., 10 West Second Street, Suite 1100, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

        {¶ 1} Defendant-appellant Terry R. Cassel appeals from his conviction and

sentencing for one count of the illegal use of a minor in nudity-oriented materials in

violation of R.C. 2907.323. Cassel argues that the trial court erred by overruling his motion to dismiss the indictment, his Crim.R. 29 motion for an acquittal, and his motion to suppress. Cassel also argues that the trial court erred by considering evidence of motive and by failing to identify which of the photos met the elements of the charged offense. The State argues that an indictment that includes the statutory elements is sufficient, that probable cause was established for the issuance of a search warrant, and that sufficient evidence was presented to support the conviction. The State argues that Cassel's motive for possessing the photos was relevant to rebut his affirmative defense that he used the photos for artistic purposes. The State also asserts that the trial court did sufficiently identify the basis for its guilty verdict.

{¶ 2} We conclude that the indictment sufficiently identifies the elements of the statute, and that probable cause for the issuance of a search warrant was established. We also conclude that evidence of motive was relevant to Cassel's affirmative defense. We conclude that the trial court did not err in overruling the Rule 29 motion to dismiss, because sufficient evidence was presented to prove all elements of the charged offense. We also conclude that the trial court is not required to identify which of the photos was the basis of its verdict, as long as the evidence is sufficient to support the conviction.

### I. Photos of Nude Children Stored in Home Computer

{¶ 3} Cassel was an art teacher for the Dayton City Schools for 26 years. He has a bachelor's degree and a master's degree in art education. Cassel retired from the school system in 1996, and then started a home improvement company. As a hobby, Cassel creates art through sculpture, painting, and drawing. Cassel primarily focuses his art on

biblical subjects, such as angels. He also does nature and landscape drawings. Cassel uses photographs as a resource for his art, and retained many photographs on his home computer.

{¶ 4}  After separating, Cassel's estranged wife provided information to the police, stating that Cassel had photos of nude children on his home computer. Mrs. Cassel's grandson also told police that he had seen photos or videos on Cassel's computer depicting minors engaged in sexual activity. A search warrant was executed and two computers were seized from Cassel's residence. No photos or videos were found that depict persons engaged in sexual activity.

## II. The Course of Proceedings

{¶ 5}  Cassel was indicted on one count of the illegal use of a minor in nudity-oriented materials, in violation of R.C. 2907.323(A)(3), a felony of the second degree. Cassel filed a motion to suppress, a demand for a bill of particulars, a motion to quash the indictment, four motions to dismiss, and three motions in limine.

{¶ 6}  To obtain the indictment, the grand jury was shown a total of 93 photos seized from Cassel's home and from his computers. Cassel argues that neither the written indictment, Dkt. #5, nor the instructions to the grand jury, included any language other than the terms of the statute, R.C. 2907.323(A)(3), omitting the phrase established by case law that narrows the application of the statute to possessing photographs of a minor in the state of nudity only when the nudity constitutes a lewd exhibition or involves a graphic focus on the minor's genitals. The trial court overruled the motion to dismiss or quash the indictment, concluding that the indictment sufficiently recited the elements of

the statute.

{¶ 7} At the hearing on the motion to suppress, the State presented the testimony of the two officers who obtained and served the search warrant. Both officers confirmed that the affidavit they prepared to obtain the search warrant was based on their interview of Cassel's ex-wife and her grandson. The officers stated that Mrs. Cassell reported to them that Cassel had photos on his computer and in books depicting nude children. Mrs. Cassel's grandson corroborated these allegations by reporting that he had seen photos or videos on Cassel's computer depicting minors engaged in sexual intercourse. Mrs. Cassel also gave the officers a CD of images downloaded from Cassel's computer and a diary. The officers acknowledged that Mrs. Cassel did not report that any of the photos or books depicted lewd behavior or focused on genitalia. The officers also acknowledged that no photos were found on the CD, or on Cassell's computers, depicting sexual activity, and nothing in the diary admitted to viewing or possessing lewd, or sexually graphic, photos or videos.

{¶ 8} Cassel testified at the suppression hearing. Cassel acknowledged that he made a written statement to the police, Ex. 32, that included a statement that he had been looking at computer images of nude boys, and occasionally nude boys having sex, and that he needed help so that he would not act upon his impulses. In his testimony at the suppression hearing, Cassel recanted his statement, contending that he was intimidated by the officers arriving at his house with sirens blaring, tearing up his house, invading his privacy looking for photos, and telling him that the judge would be lenient, and it would go a lot better for him, if he admitted to it and asked for help. He was also upset that his ex-wife would do this to him. Both officers, who served the search warrant and were present

when Cassel wrote out a statement, testified that no threats or promises were made to obtain his statement. It was stipulated that a proper *Miranda* warning was given prior to obtaining Cassel's statement.

{¶ 9} The trial court overruled the motion to suppress, finding that sufficient probable cause was established for the search warrant. Based on the statements the officers had obtained from Mrs. Cassel and her grandson, the trial court concluded that there was a fair probability that evidence of a crime would be found at Cassel's residence.

{¶ 10} The trial court denied in part, and granted in part, the motion in limine, by excluding many of the photos presented by the State, allowing 25 of the 93 photos to be introduced as evidence. Cassel also filed a motion to dismiss prior to trial, and made a Crim.R. 29 motion to dismiss at the close of the State's case, upon the ground that none of the photos depicted minors in a state of nudity that was lewd or involved a graphic focus on the minor's genitals. The trial court overruled Cassel's motion to dismiss, concluding that one or more of the photos met the definition of a minor in the state of nudity.

{¶ 11} Cassel waived his right to a jury trial, and the evidence was presented to the court in a bench trial. Cassel testified at trial, stating that he downloaded the photos marked as Exhibits 1- 25 from sources on the internet. Cassel stated that he used the photos as resources for his art. The parties stipulated that Cassel was not the parent or guardian of any child depicted in the photos. There was no evidence that Cassel actually took any of the photos himself, or had direct contact with any child depicted in the photos. Cassel testified that Exhibits 16-22 were reproductions downloaded from a Library of Congress collection of photographs from a famous turn-of-the-century photographer,

Edward Weston. At trial, Cassel again recanted his written statement made to the police at the time the search warrant was issued, and said it was not accurate because he had no photos showing sex acts.

{¶ 12} Based on the evidence presented, the trial court found Cassel guilty of one count of illegal use of a minor in nudity oriented materials. Cassel was sentenced to serve five years of community control sanctions, including registration as a Tier 1 sex offender. From his conviction and sentencing, Cassel appeals.

### III. Standard of Review

{¶ 13} Because a trial court exercises discretion in its decision to exclude or admit evidence, our standard of review on appeal is whether the trial court committed an abuse of discretion that amounted to prejudicial error. *State v. Graham,* 58 Ohio St.2d 350, 390 N.E.2d 805 (1979); *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 19. Under an abuse of discretion standard, we will review the issues of whether the trial court properly admitted evidence of motive and whether the trial court was required to identify which of the photos met the elements of the charged offense. "Generally, abuse of discretion occurs when a decision is grossly unsound, unreasonable, illegal, or unsupported by the evidence." *State v. Nichols*, 195 Ohio App.3d 323, 2011-Ohio-4671, 959 N.E.2d 1082, ¶ 16 (2d Dist.); *State v. Beechler*, 2d Dist. Clark No. 09CA54, 2010-Ohio-1900, ¶ 60-70. A decision is unreasonable if there is no sound reasoning process that would support that decision. *State v. Jones*, 2d Dist. Montgomery Nos. 25315 & 25316, 2013-Ohio-1925, ¶ 32; *State v. LeGrant,* 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 7. When applying the abuse of discretion standard, an

appellate court may not merely substitute its judgment for that of the trial court. *Berk v. Mathews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

{¶ 14} In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford,* 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley,* 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Keith*, 2d Dist. Montgomery No. 26367, 2016-Ohio-1263, ¶ 24, citing *Retherford* at 592, 639 N.E.2d 498. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 15} We review a trial court's decision on a motion to dismiss an indictment pursuant to a de novo standard of review. *State v. Gaines*, 193 Ohio App.3d 260, 2011-Ohio-1475, 951 N.E.2d 814, ¶ 14 (12th Dist.). "De novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. Clay*, 2d Dist. Miami No. 2015-CA-17, 2016-Ohio-424, ¶ 5.

{¶ 16} When we review the denial of a Crim.R. 29 motion to dismiss, we use the same standard of review that is used to review a sufficiency-of-the-evidence claim. *State v. Cokes*, 2d Dist. Montgomery No. 26223, 2015-Ohio-619, ¶ 23. When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on at least one element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000).

" 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Morefield*, 2d Dist. Montgomery No. 26155, 2015-Ohio-448, ¶ 18, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

## IV. The Indictment Is Not Defective

**{¶ 17}** For his First Assignment of Error, Cassel asserts:

THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO DISMISS THE INDICTMENT BASED UPON THE STATE'S ADMITTED IMPROPER INSTRUCTIONS TO THE GRAND JURY AND FAILING TO INCLUDE ALL THE NECESSARY ELEMENTS IN THE INDICTMENT

**{¶ 18}** Cassel argues that the indictment is defective because the State failed to inform the grand jury of all essential elements of the charged offense, and the indictment fails to include all elements of the charged offense. Cassel argues that the grand jury should have been informed that the photographs of children must depict lewd behavior or graphically focus on the genitalia of a child.

**{¶ 19}** The purpose of an indictment is to give the accused adequate notice of the crime charged. *State v. Buehner,* 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162,

¶ 7; *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, ¶ 10. An indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant of the charge, and enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Buehner* at ¶ 9, *Horner* at ¶ 45. As applied to the case before us, the indictment cites R.C. 2907.323(A)(3), and tracks the statutory language of the charged offense. Therefore, we conclude that it gave Cassel adequate notice of the crimes charged.

{¶ 20} We rejected this exact argument in *State v. Sullivan,* 2d Dist. Montgomery No. 23948, 2011-Ohio-2976, ¶ 27 and *State v. Videen*, 2013-Ohio-1364, 990 N.E.2d 173 (2d Dist.), concluding that because "the judicial construction placed on the element of 'state of nudity' is not a separate element, but merely defines that element as it is set forth in R.C. 2907.323(A)(1) and (A)(3), an indictment charging an offense under either provision of the statute is sufficient if it charges the offense using the words of the statute." *Videen* at ¶¶ 47-49.

{¶ 21} In the case before us, the indictment charges the offense using the words of the statute. Therefore, we conclude that the indictment is not defective.

{¶ 22} Cassel's First Assignment of Error is overruled.


**V. The Trial Court Did Not Err By Overruling the Motion to Suppress**

{¶ 23} For his Second Assignment of Error, Cassel asserts:

THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE EVIDENCE OBTAINED FROM APPELLANT'S COMPUTER.

{¶ 24} Cassel argues that his motion to suppress should have been granted,

because the affidavit used to obtain the search warrant did not establish probable cause, and the informant was unreliable. The State argues that the affidavit did establish probable cause.

{¶ 25} In *State v. Weimer*, 8th Dist. Cuyahoga No. 92094, 2009-Ohio-4983, ¶ 20-21, the court succinctly summarized the reviewing court's process as follows:

> In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. *City of Cincinnati v. Contemporary Arts Ctr.* (1990), 57 Ohio Misc.2d 9, 566 N.E.2d 207. A reviewing court affords great deference to a judge's determination of the existence of probable cause to support the issuance of a search warrant. *State v. Garner* (1995), 74 Ohio St.3d 49, 656 N.E.2d 623. Such a determination should not be set aside unless it was arbitrarily exercised. See *United States v. Spikes (C.A. 6, 1998)*, 158 F.3d 913, certiorari denied (1999), 525 U.S. 1086, 119 S.Ct. 836, 142 L.Ed.2d 692.

> * * *

> "To successfully attack the veracity of a facially sufficient search-warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either 'intentionally, or with reckless disregard for the truth.' " *State v. McKnight,* 107 Ohio St.3d 101,

2005-Ohio-6046, 837 N.E.2d 315, at ¶ 31, quoting *Franks v. Delaware* (1978), 438 U.S. 154, 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667. "Reckless disregard" means that the affiant had serious doubts about the truth of an allegation. *Id.,* citing *United States v. Williams (*C.A.7*,* 1984), 737 F.2d 594, 602. Omissions count as false statements if "designed to mislead or * * * made in reckless disregard of whether they would mislead the [issuing judge]." (Emphasis deleted.) *Id.,* citing *United States v. Colkley (*C.A.4, 1990), 899 F.2d 297, 301.

*Weimer* at ¶ 20-21.

{¶ 26} The Supreme Court of Ohio has also provided guidance by stating, "[i]n conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 14, citing *State v. George,* 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus. The court in *Jones* concluded that "[b]oth the trial court and the appellate court had a duty to examine the totality of the circumstances in determining whether probable cause existed for issuing the search warrant" and that probable cause is found when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Jones* at ¶¶13-15.

{¶ 27} In the case before us, the trial court looked at the totality of the circumstances by considering the process followed by the officers in obtaining the information, and by considering not only the information provided by Cassel's ex-wife, but

also by her grandson, who corroborated the allegation that Cassel had possession of questionable photos or videos on his home computer. Although Cassel argued that the officers should not have considered the allegations made by an ex-wife to be reliable, the trial court also considered the grandson's statements as corroborating evidence. We do not find that the officers had a duty to examine the contents of the CD provided by the ex-wife before preparing their affidavit because they already had corroboration from the grandson. We conclude that Cassel did not prove that the officer who prepared the affidavit made any false statement, either intentionally or with reckless disregard for the truth in the affidavit to obtain a search warrant. Based on the statements made by Mrs. Cassel and her grandson, the issuing magistrate had probable cause to conclude that there was a substantial likelihood of finding photos of nude minors on Cassel's computer.

{¶ 28}   Cassel's Second Assignment of Error is overruled.


## VI. Evidence of Motive Was Admissible

{¶ 29} For his Third Assignment of Error, Cassel asserts:

THE TRIAL COURT ERRED BY PERMITTING THE STATE TO OFFER EVIDENCE OF THE APPELLANT'S ALLEGED MOTIVE AND BY BASING ITS DECISION ON THIS ALLEGED MOTIVE

{¶ 30} Cassel argues that a conviction for violating R.C. 2907.323(A)(3) must be based on the nature of the photos, not the purpose for which the defendant may use them. Specifically, Cassel argues the court erred by admitting testimony, from one of the officers who interviewed Cassel when the search warrant was served, that Cassel stated that he thought he had an addiction and needed help. T. at 171. In the court's written

verdict, the trial court made an inaccurate finding that Cassel had stated to the officer that "he believed he was struggling with an addiction to child pornography and he was afraid that his urges were escalating." Dkt.#98, pg. 2. The transcript of the testimony of the officer who interviewed Cassel states that he only admitted to viewing "child porn back in the 60's and 70's," but had not created any child pornography. T. at pgs 170-171. When the officer told Cassel that he thought he was progressing with an addiction, Cassel responded that "he in fact thought he did have an addiction and he needed help." T. at 171. Cassel later recanted this statement.

{¶ 31} This court has held that it is the character of the material or performance, not the purpose of the person possessing or viewing it, that determines whether it involves a lewd exhibition or a graphic focus on the genitals. *State v. Martin*, 2014-Ohio-3640, 18 N.E.3d 799, ¶ 24 (2d Dist.), citing *State v. Young,* 37 Ohio St.3d 249, 258, 525 N.E.2d 1363 (1988). *See also State v. Kerrigan,* 168 Ohio App.3d 455, 2006-Ohio-4279, 860 N.E.2d 816, ¶ 22 (2d Dist.). In its verdict, the trial court specifically recognized this case law, and proceeded to discuss its view of the photos, not Cassel's motive.

{¶ 32} The trial court, as the finder of fact, identified specific aspects of several photos that lead to its conclusion that the photos meet the element of being lewd or focusing on a minor's genitals. The trial court recognized that several photos had been edited or altered. In the written verdict, the trial court specifically described the photos that met the statutory definition of the charged offense, including the photos of two nude boys, posing together, which we can discern as Exhibits 10-13, and the same boys posing with a nude adult, which we can discern as Exhibits 14 and 15. The trial court relied on the fact that the face of the adult in Exhibits 14 and 15 was edited out of the picture, to

conclude that the editing caused the photo to focus on the genitals.

{¶ 33} Although motive is not an element of the charged offense, motive is an essential element of the affirmative defenses set forth in R.C. 2907.323(A)(3)(a), which provide exceptions to the prohibited conduct if possession of the photos is "for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, member of the clergy, prosecutor, judge, or other person having a proper interest in the material or performance." Therefore, when Cassel raised the affirmative defense that he was using the photos for artistic purposes, his purpose or motive for possession of the photos became an element of his defense. In its written verdict, the trial court reviewed Cassel's testimony regarding his artistic use of the photos, and recognized that Cassel was a former art teacher who enjoys sketching pictures of children and nature. The verdict does not discuss Exhibits 16-22, which Cassel described as reproductions of photos from a famous turn-of-the-century photographer, downloaded from the Library of Congress. In the verdict, the trial court also does not discuss Cassel's sketch books, marked as Defense Exhibits OO & WW, or his pencil sketches marked as Exhibits A, B, C, D, XX, YY, ZZ, AAA, & BBB, which include drawings of nude children as angels.

{¶ 34} While we agree that motive is an essential element of the affirmative defenses available under R.C. 2907.323(A)(3)(a), and that evidence of motive is therefore appropriate to admit in the defendant's case, and in the State's rebuttal case, it is not admissible during the State's case-in-chief to establish the elements of the offense. The trial court did err by permitting evidence of motive during the State's case-in-chief.

However, to constitute reversible error, Cassel must also establish that he was materially prejudiced by the trial court's error. When reviewing alleged errors regarding the admission of evidence, we have held that, "[u]nless the trial court has 'clearly abused its discretion and the defendant has been materially prejudiced thereby, [appellate courts] should be slow to interfere' with the exercise of such discretion." *State v. Goldblum*, 2d Dist. Montgomery No. 25851, 2014-Ohio-5068, ¶ 32, quoting *State v. Hymore,* 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

{¶ 35}  We conclude that Cassel was not prejudiced by this error, since evidence of motive was admissible to rebut Cassel's defense that the photos were used for artistic purposes. At a bench trial, the trial court has the ability to apply the evidence properly, regardless of the order of presentation. Therefore, Cassel's Third Assignment of Error is overruled.

## VII. There Is Sufficient Evidence to Support the Conviction

{¶ 36}  For his Fourth Assignment of Error, Cassel asserts:

THE TRIAL COURT ERRED BY FAILING TO DISMISS THE INDICTMENT, FAILING TO GRANT THE APPELLANT'S RULE 29 MOTION, AND FINDING THE APPELLANT GUILTY OF THE POSSESSION OF TWENTY-SIX PHOTOGRAPHS IN DISPUTE EVEN THOUGH THEY DO NOT DEPICT LEWD BEHAVIOR OR GRAPHICALLY FOCUS ON GENITALIA.

{¶ 37} Cassel argues that the trial court should have dismissed the indictment, granted his Rule 29 motion for a judgment of acquittal, or entered a verdict of acquittal, because there was insufficient evidence to prove the elements of the crime of illegal use

of a minor in nudity oriented material or performance in violation of R.C. 2907.323, by proof beyond a reasonable doubt. Cassel argues that his Crim.R. 29 motion should have been granted, because the State's evidence during the bench trial was not legally sufficient to satisfy all elements of the offense. Specifically, Cassel argues that the State did not establish that the material in his possession displayed a specific state of nudity prohibited under the governing statute.

{¶ 38} Crim.R. 29(A) provides:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

{¶ 39} A Crim.R. 29(A) motion tests the sufficiency of evidence. When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). At this bench trial, the trial court, as the trier of fact, was in the best position to weigh the evidence.

{¶ 40} Cassel was indicted under R.C. 2907.323(A)(3), which provides:

(A) No person shall do any of the following:

* * *

(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies:

(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, member of the clergy, prosecutor, judge, or other person having a proper interest in the material or performance.

(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred.

{¶ 41} The phrase "state of nudity" was analyzed in *State v. Young,* 37 Ohio St.3d 249, 525 N.E.2d 1363 (1988). The Supreme Court of Ohio concluded that the statute specifically prohibits "the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor the ward of the person charged." *Id.* at 252. On appeal to the Supreme Court of the United States, that court agreed that "[b]y limiting the statute's operation in this manner, the Ohio Supreme Court avoided penalizing persons for viewing or possessing innocuous

photographs of naked children." *Osborne v. Ohio,* 495 U.S. 103, 112, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). "Thus, the phrase 'state of nudity' was not intended to cover all materials involving a nude minor; instead, the prohibition only applies to any lewd exhibition or graphic focus upon the genitals." *State v. Tooley,* 114 Ohio St.3d 366, 2007-Ohio-3698, 872 N.E.2d 894, ¶ 16. As to the definition of "lewd," the Supreme Court of Ohio has indicated that the term refers to " 'sexually unchaste or licentious * * * lascivious * * * inciting to sensual desire or imagination * * *.' " *State v. Aguirre*, 11th Dist. Portage No. 2010-P-0057, 2012-Ohio-644, ¶ 54, citing *State ex rel. Rear Door Bookstore v. Tenth Dist. Ct. of Appeals,* 63 Ohio St.3d 354, 358, 588 N.E.2d 116 (1992), quoting Webster's Third New International Dictionary 1301 (1986). We utilized this same definition of lewd in both *Videen* and *Kerrigan*, *supra*.

**{¶ 42}** It is undisputed that none of the photos show persons engaged in sexual activity. We have held that "lewd exhibition" does not require sexual activity. *State v. Jewell*, 2d Dist. Montgomery No. 16254, 1997 WL 476667 (Aug. 22, 1997). In *Jewell*, we found violations of the statute when the photos "constitute[d] visual depictions of children lewdly exhibiting their genitals. * * * [T]he child is posed in such a way that her genital organ is prominently displayed, open for viewing * * * even though the entire body of the child, or almost the entire body of the child, is displayed." *Id*.

**{¶ 43}** Since every photo is different, no single definition is sufficient to capture the precise meaning of the statute, which is targeted to prevent the exploitation of children for the purpose of child pornography. It is not illegal to possess pictures of nude bodies, a common art form utilized by many famous artists. We do not find that any of the photos depict nude minors posed in a manner that is suggestive of sexual excitement or designed

to incite sexual desire. However, more than one of the photos can be viewed as a graphic focus on the minor's genitals. In *Kerrigan*, in determining whether a video was focused on the minor's genitals, we analyzed whether the videographer zoomed in on, or lingered upon, the genitals, whether any particular attention was focused on the genitals, or whether any attempt was made to edit them out of the picture. *Kerrigan* at ¶ 26. In *Videen*, we again considered whether the posing or editing of the photos led to a finding that the photograph was intrinsically unchaste or licentious, inciting to sensual desire or imagination. *Videen* at ¶¶ 32-33.

{¶ 44} Exhibits 16-22 are seven black-and-white photos that appear to be of the same nude boy, each edited in a slightly different manner, starting with one that includes the boy's head on the top of the picture, and stopping under the boy's waist. Each successive photo moves down the boy's body, starting and ending at a lower point, with two ending at the boy's knees. Four of the photos are edited to focus the boy's genitals on the center of the page. In its written verdict, the trial court did not discuss Exhibits 16-22. In his defense, Cassel testified that these photos were reproductions of photographs from a famous photographer, Edward Weston, which can be downloaded from the Library of Congress website. This testimony was not rebutted by the State. As works of art, Cassel argued that he met his burden of proving the affirmative defense that his possession of Exhibits 16-22 were for an artistic purpose.

{¶ 45} The trial court described one black-and-white photo as an edited version of Exhibits 4 & 5, which we can discern as Ex. 6. Cassel explained that Exhibit 6 was an artistic technique to make a photograph look like a sketched drawing. Cassel argued that he met his burden of proving the affirmative defense that his possession of Exhibits 4-6

were for an artistic purpose.

{¶ 46} Exhibits 14 and 15 both include the same three naked persons, an adult in the middle, with his arms extended to hold up two young boys, but the face of the adult is obliterated. By holding up the two boys, the adult has positioned the boys in a manner that graphically focuses on their genitals, but the body ends just below his waist, so the adult's genitals are not visible. The same two naked boys are depicted together in Exhibits 10-13, and it appears that adults who were standing on either side of the boys are removed from the photos, either by the camera focus or by editing. The boys' genitals are clearly visible, along with their entire bodies. Cassel argued that Ex. 14 was used as a resource for a sketch he started in his sketchbook, Ex. OO, of Jesus gathering up children.

{¶ 47} We conclude that a reasonable mind could find, beyond a reasonable doubt, that one or more of the photos marked as Exhibits 10-15 meet the elements of the offense by graphically focusing on a minor's genitals, and that Cassel was not using the photos for artistic purposes. Therefore, the trial court did not err in overruling Cassel's motion to dismiss and the Crim. R. 29 motion, or by finding him guilty of the charged offense.

{¶ 48} Cassel's Fourth Assignment of Error is overruled.

### VIII. The Court Was Not Required to Identify Specific Photos

{¶ 49} For his Fifth Assignment of Error, Cassel asserts:

THE TRIAL COURT ERRED BY FAILING TO IDENTIFY WHICH SPECIFIC PHOTOGRAPHS IT FOUND TO BE A VIOLATION OF OHIO REVISED CODE SECTION 2907.323(A)(3).

{¶ 50}  Cassel argues that his right to a meaningful review of the basis of the trial court's decision to convict him is prejudiced by the trial court's failure to identify which of the 25 photos in evidence meet the requirement of depicting a lewd exhibition or focusing on genitals. The State argues that all of the 25 photos constitute violations of the statute, but also separately identifies five that focus on genitalia, Exhibits 16, 19, 20, 21 & 22, and ten that involve a lewd exhibition, Exhibits 10-15, 17, 18, 23 and 24. The question before us is whether the trial court abused its discretion by failing to specify the particular photographs supporting its guilty verdict.

{¶ 51} As discussed above, we are able to discern from the trial court's description of the photos in its written verdict, that the trial court considered one or more of Exhibits 10-15 to meet the elements of the offense. Although the trial court did not discuss Exhibits 1-4 or 16-25, it was not required to find more than one photo meeting the elements of the offense, and not meeting the elements of the affirmative defense, in order to find Cassel guilty of one count of the charged offense. Based on the findings made by the trial court in its written verdict, we conclude that the trial court sufficiently identified a sound reasoning process for its conclusion and did not abuse its discretion. Cassel's Fifth Assignment of Error is overruled.


## IX. Conclusion

{¶ 52}  All assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . .

WELBAUM, J., concurs.

FROELICH, J., concurring:

{¶ 53} After Appellant made a discovery demand, Appellant's counsel was permitted to view the 93 photographs that formed the basis for the indictment, but Appellant was not provided a copy of the photographs. The State made no Crim.R. 16(C) "counsel only" designation nor was a Crim.R. 16(D) certificate of non-disclosure sought by the State.

{¶ 54} Appellant moved the court to be allowed to examine the withheld material. (Doc. #20.) In the motion, Appellant's counsel stated that he had attempted to describe the photographs to Appellant, but his attempts were "insufficient." Counsel asserted that Appellant had a due process right to view this "critical evidence" before trial. The State filed no written response to the motion, but apparently argued during an in-chambers conference that Appellant should not be permitted to view the exhibits. The trial court's decision specifically denied Appellant the pretrial opportunity to view the material and indicated that, since the photographs were on Appellant's computer when seized by the police, Appellant should be able to remember them based on counsel's description. The court found that Appellant had not demonstrated "a particularized need to view the photographs." (Doc. #33.)

{¶ 55} After the trial court's decision, an in-chambers meeting was apparently held to discuss the photographs, and an agreement was apparently reached that the State would provide copies of the photographs to Appellant's counsel and counsel would execute a non-disclosure agreement. (*See* Doc. #36.) When the State subsequently refused to "copy and disseminate" the photographs to Appellant's counsel, counsel filed

a motion to dismiss the indictment. (Doc. #36.) The State responded that copying and disseminating the photographs to Appellant's counsel would violate R.C. 2907.323(A)(1). (Doc. # 37.) The trial court ordered the State to immediately furnish the defense a copy of the photographs in DVD/CD format, with the following conditions:

1. The DVD/CD, or any portion thereof, shall **NOT** be reproduced, downloaded, or copied in any way.

2. The DVD/CD or any portion thereof is to be viewed **ONLY** by the defense counsel and/or any defense expert.

3. The DVD/CD will be returned to State upon completion of trial or plea or dismissal of this matter.

(Emphasis in original.) (Doc. #40.) The State complied with this order on February 11, 2015. (Doc. #43.)

**{¶ 56}** The intent of Crim.R. 16 is "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). The Criminal Rules and the Local Rules of Montgomery County explicitly require photographic evidence against the Appellant to be provided to him, except for very limited circumstances. *See* Crim.R. 16(B)(3).

**{¶ 57}** The trial court's ruling does not explain its reasons for designating the photographs as "counsel only" material, and having reviewed all the material seized by the State and/or admitted into evidence, none of it appears to be encompassed by that Rule. Moreover, the pictures were the corpus delecti; regardless of the Appellant's intent or statements that he made, there could be no conviction without the substance of the

photos being admitted. While I agree that precautions were necessary to ensure that the photographs were not further copied and disseminated and thus Appellant's counsel was reasonably restricted from downloading, copying or reproducing the photographs, there does not appear to be any reason why Appellant was denied the opportunity to view the photographs with his attorney so that Appellant could fully assist with his defense.

{¶ 58} However, at no point in the proceedings is there any indication by Appellant of an objection to the court's ruling, a request for a continuance once Appellant was able to view the material at trial, or even an indication during Appellant's testimony that he was hampered by this lack of disclosure, let alone that he was legally prejudiced. And this does not fall into any recognized definition of structural error. *See, e.g., United States v. Gonzalez-Lopez*, 548 U.S.140, 149, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006).

{¶ 59} I concur in the affirmance.

. . . . . . . . . .

.Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Terry L. Lewis
Hon. Dennis J. Adkins