[Cite as *State v. Melms*, 2018-Ohio-1947.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                           :
                                        :
      Plaintiff-Appellee              :      C.A. CASE NO. 27685
                                        :
v.                                      :      T.C. NO. 2016-CR-1673
                                        :
ANDREW MELMS                            :      (Criminal Appeal from
                                        :      Common Pleas Court)
      Defendant-Appellant             :
                                        :

. . . . . . . . . . .

# O P I N I O N

Rendered on the 18th day of May, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by DYLAN SMEARCHECK, Atty. Reg. No. 85219, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ANGELINA JACKSON, Atty. Reg. No. 77937, Assistant Public Defender, Montgomery County Public Defender's Office, 117 S. Main Street, Suite 400, Dayton, Ohio 45422
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** This matter is before the Court on the August 8, 2017 Notice of Appeal of Andrew Melms. Melms appeals from the trial court's July 28, 2017 Judgment Entry of Conviction, following a no contest plea to one count of aggravated possession of drugs, namely fentanyl, in violation of R.C. 2925.11(A), a felony of the fifth degree. His appeal is specifically addressed to the trial court's denial of his motion to dismiss his indictment on the basis of immunity from prosecution, pursuant to R.C. 2925.11(B)(2)(b), which went into effect on September 13, 2016, and is known as the "911 Good Samaritan Law." We hereby affirm the judgment of the trial court.

**{¶ 2}** At the outset, we note that the "crisis in opioid deaths has reached epidemic proportions in the United States (33,091 in 2015), and currently exceeds all other drug-related deaths or traffic fatalities." Report: Governor Chris Christie, "The President's Commission on Combating Drug Addiction and the Opioid Crisis," Washington, D.C., November 1, 2017, pg. 31. These data from the Centers for Disease Control and Prevention are expected to rise even higher in 2016 and 2017.

**{¶ 3}** Melms was indicted on July 21, 2016. He failed to appear for a scheduled August 4, 2016 arraignment, and a warrant was issued for his arrest. On March 23, 2017, Melms appeared and entered a plea of not guilty. On April 6, 2017, he filed a "Request for Intervention in Lieu of Conviction and Time Waiver."

**{¶ 4}** On May 31, 2017, Melms filed a "Motion to Dismiss Indictment as Defendant is a 'Qualified Individual' under O.R.C. 2925.11(B)(2)." The memorandum in support of the motion provides the following facts:

> On May 30, 2016, Defendant was arrested by Officer Joshua Bowling

of the Dayton, Ohio, police department for possession of fentanyl, a felony of the fifth degree. He was found alone, slumped over and nearly unconscious in the front passenger seat of a vehicle located at Love's Travel Stop, 2217 S. Edwin [C.] Moses Blvd., Dayton, Ohio. Dayton Paramedics were called and responded to the scene. Defendant was then taken to the Montgomery County Jail. Defendant had a traffic warrant out of Clark County Jail, Springfield, Ohio. Defendant was transferred to the Clark County Jail from Montgomery County Jail on June 1, 2016. Subsequently, Defendant was transferred from Clark County Jail to the Tri-County Jail (Champaign County) on child support issues. Defendant was released from the Tri-County Jail on July 2, 2016. Defendant was incarcerated from the time of his arrest on May 30, 2016, until July 2, 2016.

On July 8, 2016, Defendant sought medical assistance because he suffered from a drug overdose on May 30, 2016. Six gel caps of fentanyl were recovered from the scene. Defendant sought treatment with Dayton Opiate Recovery Clinic located at 8401 Claude Thomas Road, Dayton, Ohio. See attached letter from Melanie Briggs, CMA of the Dayton Opiate Recovery Clinic dated April 18, 2017. The letter from Dayton Opiate Recovery Clinic has been provided to the prosecutor.

* * * Defendant sought treatment for his opiate addiction (6) six days after he was released from incarceration. Defendant has been taking subox[o]ne since July of 2016.

{¶ 5} Melms asserted that he was immune from prosecution pursuant to R.C.

2925.11(B)(2)(b)[1], which provides as follows:

* * *

(b) Subject to division (B)(2)(f)[2] of this section, a qualified individual shall not be arrested, charged, prosecuted, convicted, or penalized pursuant to this chapter for a minor drug possession offense if all of the following apply:

(i) The evidence of the obtaining, possession, or use of the controlled substance or controlled substance analog that would be the basis of the offense was obtained as a result of the qualified individual seeking the medical assistance or experiencing an overdose and needing medical assistance.

(ii) Subject to division (B)(2)(g)[3] of this section, within thirty days after

---

[1] We note that R.C. 128.04 further provides as follows:
(A) Public safety answering point personnel who are certified as emergency service telecommunicators under section 4742.03 of the Revised Code shall receive training in informing individuals who call about an apparent drug overdose about the immunity from prosecution for a minor drug possession offense created by section 2925.11 of the Revised Code.
(B) Public safety answering point personnel who receive a call about an apparent drug overdose shall make reasonable efforts, upon the caller's inquiry, to inform the caller about the immunity from prosecution for a minor drug possession offense created by section 2925.11 of the Revised Code.

[2] "Division (B)(2)(b) of this section does not apply to any person who twice previously has been granted an immunity under division (B)(2)(b) of this section. No person shall be granted an immunity under division (B)(2)(b) of this section more than two times." R.C. 2925.11(B)(2)(f).

[3] "Nothing in this section shall compel any qualified individual to disclose protected health information in a way that conflicts with the requirements of the 'Health Insurance Portability and Accountability Act of 1996,' 104 Pub.L.No. 191, 110 Stat. 2021, 42 U.S.C. 1320d et seq., as amended, and regulations promulgated by the United States department of health and human services to implement the act or the requirements of 42

seeking or obtaining the medical assistance, the qualified individual seeks and obtains a screening and receives a referral for treatment from a community addiction services provider or a properly credentialed addiction treatment professional.

(iii) Subject to division (B)(2)(g) of this section, the qualified individual who obtains a screening and receives a referral for treatment under division (B)(2)(b)(ii) of this section, upon the request of any prosecuting attorney, submits documentation to the prosecuting attorney that verifies that the qualified individual satisfied the requirements of that division. The documentation shall be limited to the date and time of the screening obtained and referral received.

{¶ 6} R.C. 2925.11(B)(2)(a) provides the following definitions:

* * *

(iv) "Minor drug possession offense" means a violation of this section that is a misdemeanor or a felony of the fifth degree.

* * *

(viii) "Qualified individual" means a person who is not on community control or post-release control and is a person acting in good faith who seeks or obtains medical assistance for another person who is experiencing a drug overdose, a person who experiences a drug overdose and who seeks medical assistance for that overdose, or a person who is the subject of another person seeking or obtaining medical assistance for that overdose

---

C.F.R. Part 2."   R.C. 2925.11(B)(2)(g).

as described in division (B)(2)(b) of this section.

(ix) "Seek or obtain medical assistance" includes, but is not limited to making a 9-1-1 call, contacting in person or by telephone call an on-duty peace officer, or transporting or presenting a person to a health care facility.

{¶ 7} Melms argued that he was not subject to prosecution for the following reasons:

1. Defendant was not on community control or post release control;

2. Defendant obtained medical assistance while experiencing a drug overdose;

3. Defendant sought an assessment and referral within (6) days of being released from incarceration from the Tri-County Jail;

4. Defendant was indicted for a minor drug offense * * *;

5. Defendant provided referral for treatment to the prosecuting attorney.

{¶ 8} Melms argued that he "should be allowed dismissal of his charge[] because he was unable to seek treatment until he was released from incarceration from three different jails after his initial arrest.   Once defendant was released from incarceration he obtained an assessment and referral and is currently in treatment."   Melms argued that it "would be fundamentally unfair for him to be denied the benefit of immunity from the statute."   He asserted that "there is a violation of his Equal Protection Rights under both the U.S. and Ohio Constitutions.   Specifically, Defendant was incarcerated and was unable to seek the treatment within the 30-day timeframe after overdosing. * * * A denial of the dismissal would infringe upon his fundamental rights."   Attached to the motion is

correspondence from "Melanie Briggs, CMA," of the Dayton Opiate Recovery Clinic that provides that Melms was "seen at our office" on May 3, 2016, July 8, 2016, and February 9, 2017.

{¶ 9} The State opposed the motion on June 5, 2017. The State asserted that because Melms sought treatment at the Dayton Opiate Recovery Clinic on July 8, 2016, 39 days after his arrest, "the State is not required to grant immunity in this case." According to the State, R.C. 2925.11(B)(2)(b)(ii) contains "no language implying that the thirty days start any time other than when the individual seeks or obtains medical assistance." The State argued that Melms obtained medical assistance on May 30, 2016, and that the statute "does not provide any exception for an individual who spends the entire thirty days in custody. Had the legislature intended the thirty day clock to start running from the time of release from jail, the statute would have reflected that." On July 20, 2017, Melms filed supplemental documents to his motion to dismiss, namely a "Follow Up Visit Progress Note," dated July 8, 2016, which provides that Melms reported using heroin that day, was experiencing withdrawal symptoms, and "will start [suboxone] tomorrow."

{¶ 10} The State responded that there "are no records from Defendant indicating that he received any treatment from July 8, 2016 through February 9, 2017. Further, there are no records of what treatment he received on February 9, 2017 or if he continued to receive treatment after that date." The State asserts that while Melms "was in jail for the entirety of the thirty days, * * * that does not change the mandate of the statute," and since "the screening occurred outside of the thirty day window, dismissal of the charges is not required, but rather at the State's discretion."

{¶ 11} In its decision overruling Melms' motion, the trial court determined as follows:

Defendant appears to have met the requirements of ORC Section 2925.11(B) except for subsection (ii), which requires that treatment be sough[t] within thirty days of receiving medical assistance for a drug overdose. Defendant argues that the thirty-day period should be tolled for the time that he was in jail. The statute, however, does not provide an exception to the thirty-day period for any reason. If the General Assembly had desired to toll the period while a person was in jail, it could have done so. Further, the Court notes that there is no evidence of any follow-up treatment by Defendant until one treatment date on February 9, 2017. Thus, it does not appear to this Court that Defendant has made a serious attempt to seek treatment.

Because Defendant did not obtain the assessment and referral within thirty days of his obtaining medical assistance as required by O.R.C. Section 2925.11(B)(2)(b)(ii), Defendant is not a qualified individual immune from prosecution under the statute.

{¶ 12} On July 26, 2017, Melms entered his plea of no contest, and he was sentenced to community control sanctions for a period not to exceed five years. Melms asserts one assignment of error herein as follows:

THE TRIAL COURT ERRED IN OVERRULING MR. MELMS' MOTION TO DISMISS, WHERE THE FAILURE TO GRANT IMMUNITY FROM PROSECUTION DUE TO CONFINEMENT CONSTITUTED A

DENIAL OF DUE PROCESS AND EQUAL PROTECTION OF THE LAW AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶ 13} Melms further identifies the following three issues as part of his sole assigned error:

1. Denying Mr. Melms immunity from prosecution due to his confinement deprives him of due process and is fundamentally unfair in violation of the Fourteenth Amendment to the United States Constitution and Sections 1 and 16, Article I of the Ohio Constitution.

2. Denying Mr. Melms immunity from prosecution due to his confinement is a denial of the equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Ohio Constitution.

3. Denying Mr. Melms immunity from prosecution due to his confinement is contrary to the policy considerations underlying the immunity statute.

{¶ 14} Melms asserts that he is a qualified individual as defined by R.C. 2925.11(B)(2)(a)(viii), that he received medical assistance for an overdose, pursuant to R.C. 2925.11(B)(2)(b)(i), and that he provided documentation to the prosecutor regarding his screening and referral for treatment, pursuant to R.C. 2925.11(B)(2)(b)(iii). Melms notes that "the State does not dispute that [he] was continuously incarcerated from the date of his overdose until July 2, 2017." Melms asserts that but for his "involuntary confinement, he would have been able to obtain the screening and referral within 30 days

of his overdose and would not have been prosecuted. It was simply impossible for him to do so." Melms argues that "the trial court's application of R.C. 2925.11(B)(2)(b) is unconstitutional."

{¶ 15} Melms argues that "[t]his case involves a fundamental right in that Mr. Melms faces deprivation of his physical liberty by virtue of a criminal prosecution." He asserts that "there is no compelling governmental interest that is served by denying Mr. Melms immunity under the circumstances." Melms asserts that since he was "treated differently than a non-incarcerated person," and since "such treatment involves the potential deprivation of [his] physical liberty, strict scrutiny must be applied." According to Melms, he was "subjected to a potential loss of liberty solely because he was incarcerated after his overdose." (Emphasis sic.)

{¶ 16} Melms further argues that "the unequal treatment at issue in this case is not simply one based upon the mere pendency of open traffic or criminal matters, but is also essentially a classification based upon wealth. Had Mr. Melms posted bond and been released on either of his cases, he would have been able to obtain the evaluation within thirty days." He argues that "in this case, the degree of discrimination between incarcerated and non-incarcerated persons is significant, resulting in Mr. Melms being convicted of a felony that involves potential prison time." According to Melms, R.C. 2925.11(B)(2)(b) "was enacted to encourage addicted persons to seek help, which Mr. Melms did as soon as he was physically able to. There is simply no compelling governmental interest that justifies treating him differently than a person who was not confined following an overdose."

{¶ 17} Finally, Melms asserts as follows:

Ohio is in the midst of an unprecedented epidemic of drug addiction and overdoses. R.C. 2925.11(B) was amended to encourage addicted persons not only to seek help at the scene of an overdose, but to also seek follow up treatment <u>without criminal liability</u>. It is widely recognized that criminal charges and convictions carry a host of collateral consequences that can touch nearly every area of a person's life. Mr. Melms did exactly what the statute is encouraging people to do, yet because of a delay of a little over a week that he had no control over, he is now a convicted felon. This result is completely contrary to the policy considerations underlying the immunity statute.

(Emphasis sic and footnote omitted.)

{¶ 18} The State responds in part as follows:

Here, the statute gives a thirty day deadline from the time the medical assistance was rendered. There is nothing ambiguous or uncertain about the deadline. This statute applies to drug users who have just received emergency medical assistance, a group that by its nature is likely to face some period of incarceration. The legislature could have added - but did not – a provision tolling the thirty day clock for time during which an individual is incarcerated. The fact that no such provision was included indicates the legislative intent that the thirty days is just that: thirty days.

{¶ 19} The State further asserts that since "any distinction drawn by the language of this statute or its application is not based on any suspect class and no fundamental right is at issue, the proper analysis is the rational basis test." The State asserts that the

"right at stake here is not, as [Melms] claims, freedom from incarceration, but rather an entitlement to prosecutorial immunity. The newly established immunity from prosecution set out in R.C. 2925.11(B) is not a fundamental right."

{¶ 20} According to the State, "the class distinction drawn by this law is based solely on whether an individual has received a screening and referral for addiction services. Nothing in the statute bars that screening and referral from occurring while an individual is incarcerated." The State notes that even if "the class distinction here is drawn on the basis of wealth, the United States Supreme Court and the Ohio Supreme Court have both held that classifications drawn on the basis of wealth are not suspect."

{¶ 21} The State "asks that this Court apply the rational basis test," since "neither a fundamental right nor a suspect class is at issue here." The State notes that "the immunity provision itself and the thirty day deadline both bear a substantial relation to public health, safety, morals, and general welfare of the public. The law offers immunity from prosecution as an incentive for individuals who seek treatment for addiction."

{¶ 22} Finally, the State "agrees with Appellant that the policy objectives of the immunity provision are laudable; addressing the opioid crisis of this region is a worthy cause." The State argues that "a conviction holding Appellant accountable for his actions and requiring community control would be more in line with that objective than would granting him immunity." According to the State, from "a policy perspective, community control sanctions are preferable to simply granting immunity and dismissing the case because they provide a level of accountability he would otherwise be lacking." The State notes that Melms "did not follow through with a screening for [Intervention in Lieu of Conviction]." The State asserts that rather "than actually seeking treatment for addiction,

Appellant claims an entitlement to immunity under a provision whose requirements he did not meet."

{¶ 23} In reply, Melms asserts that the "arbitrary 30-day time frame of R.C. 2925.11(B)(2)(b)(ii) as applied to Appellant violated his rights to due process and the equal protection of the law."

{¶ 24} We review the trial court's denial of Melms' motion to dismiss de novo. *State v. Fields,* 2017-Ohio-400, 84 N.E.3d 193, ¶ 19 (2d Dist.). " 'De novo review requires an independent review of the trial court's decision without any deference to the trial court's determination.' * * *." *Id.*

{¶ 25} We initially note that " '[a] regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality[,] * * * unless such enactments are clearly unconstitutional beyond a reasonable doubt.' * * *." *State v. Vanover*, 2d Dist. Clark No. 2014-CA-80, 2015-Ohio-345, ¶ 17.

{¶ 26} Regarding Melms' argument that it was fundamentally unfair to deny him immunity and that he was denied due process, we first note that it is undisputed that Melms was arrested on May 30, 2016, following his overdose. In his memorandum in support of his motion to dismiss, he acknowledges that he was transferred on June 1, 2016 to the Clark County Jail, pursuant to an outstanding warrant, where he was held until he was transferred to the Tri-County Jail sometime before his release therefrom on July 2, 2016. Melms was not indicted for the instant offense until July 21, 2016, and the trial court did not order bail set until August 18, 2016, after Melms failed to appear at his August 4, 2016 arraignment. In other words, Melms was not being held in jail in lieu of

bond on the instant drug offense, and while his possession offense triggered the potential application of R.C. 2925.11(B)(2)(b), his confinement from June 1, 2016 until his July 2, 2016 release was on an unrelated case(s).

{¶ 27} As this Court has noted:

> As a threshold matter, a person alleging a due process violation must first demonstrate a deprivation of a protected liberty or property interest. *State v. Hayden,* 96 Ohio St.3d 211, 773 N.E.2d 502, 2002-Ohio-4169, ¶ 6, cert. denied *Hayden v. Ohio* (2003), 537 U.S. 1197, 123 S.Ct. 1265, 154 L.Ed.2d 1035, citation omitted.

*State v. Heys*, 2d Dist. Miami No. 09-CA-04, 2009-Ohio-5397, ¶ 10.

{¶ 28} " 'A constitutionally protected liberty interest has been defined as freedom from bodily restraint and punishment.' * * *." *Heys* at ¶12. We cannot conclude that, as applied to Melms, R.C. 2925.11(B)(2)(b) is punitive in nature due to his being lawfully confined during the 30 day period provided in R.C. 2925.11(B)(2)(b)(ii) to seek screening and treatment referral. Melms could have sought a screening and referral while in jail,[4] and the *possibility* of a prison sentence upon prosecution is not the type of deprivation of liberty that the due process clause protects. Accordingly, Melms' due process argument fails.

{¶ 29} Regarding Melms' assertion that he was denied equal protection, the Ohio Supreme Court has previously noted:

> The Fourteenth Amendment to the United States Constitution

---

[4] We recognize the difficulty involved in seeking such treatment and assessment while incarcerated. Nevertheless, the record does not contain any evidence that such an effort was made and thwarted by Melms' incarceration.

provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause prevents states from treating people differently under its laws on an arbitrary basis. *Harper v. Virginia State Bd. of Elections* (1966), 383 U.S. 663, 681, 86 S.Ct. 1079, 1089, 16 L.Ed.2d 169, 181 (Harlan, J., dissenting). "Whether any such differing treatment is to be deemed arbitrary depends on whether or not it reflects an appropriate differentiating classification among those affected; the clause has never been thought to require equal treatment of all persons despite differing circumstances." *Id.*

Under the Equal Protection Clause, a legislative distinction need only be created in such a manner as to bear a rational relationship to a legitimate state interest. *Clements v. Fashing* (1982), 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508, 515. These distinctions are invalidated only where "they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." *Id.*; see, also, *Heller v. Doe* (1993), 509 U.S. 312, 320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257, 271; *Am. Assn. of Univ. Professors, Cent. State Univ. v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 58, 717 N.E.2d 286, 290. This rational basis analysis is discarded for a higher level of scrutiny only where the challenged statute involves a suspect class or a fundamental constitutional right. *Clements,* 457 U.S. at 963, 102 S.Ct. at 2843, 73 L.Ed.2d at 515-516; see, also, *Cleburne v. Cleburne Living Ctr.* (1985), 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320.

*State v. Williams*, 88 Ohio St.3d 513, 530, 728 N.E.2d 342 (2000).

{¶ 30} As the *Williams* Court further noted:

"[A] suspect class is one 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.' " *Massachusettes Bd. of Retirement v. Murgia* (1976), 427 U.S. 307, 313, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520, 525, quoting *San Antonio Indep. School Dist. v. Rodriguez* (1973), 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16, 40. Moreover, the only classifications recognized as "suspect" are those involving race, alienage, and ancestry. *Id.* at 312, 96 S.Ct. at 2566, 49 L.Ed.2d at 524, fn. 4. * * *

*Williams* at 530.

{¶ 31} Further,

* * * [r]ecognized fundamental rights include the right to vote, the right of interstate travel, rights guaranteed by the First Amendment to the United States Constitution, the right to procreate, and other rights of a uniquely personal nature. *Murgia*, 427 U.S. at 312, 96 S.Ct. at 2566, 49 L.Ed.2d at 524, fn. 3; see, also, *Albright v. Oliver* (1994), 510 U.S. 266, 272, 114 S.Ct. 807, 812, 127 L.Ed.2d 114, 122.

*Williams* at 530.

{¶ 32} We agree with the State that R.C. 2925.11(B)(2)(b) does not require a higher level of scrutiny than that provided by rational basis review. As noted above,

Melms argues that but for his confinement he would have been able to comply with R.C. 2925.11(B)(2)(b)(ii), and that he was accordingly treated differently than a non-incarcerated person.   We conclude that lawfully confined individuals are not a suspect class warranting extraordinary protection, and that Melms' alleged inability to post bond did not prohibit him from demanding a screening and referral while confined.   We further conclude that the statute does not involve a uniquely personal fundamental constitutional right; potential immunity from prosecution is not such a right.   Accordingly, rational basis analysis is appropriate.

{¶ 33} As noted in *Williams*:

Under the rational basis standard, we are to grant substantial deference to the predictive judgment of the General Assembly.   See *Turner Broadcasting Sys. v. Fed. Communications Comm.* (1997), 520 U.S. 180, 195, 117 S.Ct. 1174, 1189, 137 L.Ed.2d 369, 391.   The state does not bear the burden of proving that some rational basis justifies the challenged legislation; rather, the challenger must negative every conceivable basis before an equal protection challenge will be upheld.   See *Heller,* 509 U.S. at 320, 113 S.Ct. at 2642, 125 L.Ed.2d at 271.

*Id.*, at 531.

{¶ 34}   We conclude that R.C. 2925.11(B)(2)(b) bears a rational relationship to the legitimate interest of the State in encouraging individuals to seek prompt medical attention or follow-up care for addiction by providing immunity from prosecution as set forth in the statute.   Melms' equal protection argument accordingly fails.

{¶ 35}   Lastly, Melm's third argument is that the result herein is "completely

contrary to the policy considerations underlying the immunity statute." R.C. 2925.11(B)(2)(b) provides a 30-day, and not an unlimited window, to qualify for immunity from prosecution.[5] While Melms argues that he "did exactly what the statute is encouraging people to do," we note that the documentation he submitted reflects that on July 8, 2016, over a month after his overdose, Melms admitted using heroin, and there is no evidence of follow up treatment thereafter until February 9, 2017, seven months later. Granted Melms seemingly was an ideal candidate for immunity, but for the clear and unambiguous 30-day window set forth by the legislature. The remedy lies with the legislature to either eliminate the 30-day restriction or to provide for the exercise of judicial discretion, particularly in those cases of the most vulnerable, often indigent, incarcerated individuals who are unaware of the time limit until after counsel is appointed on the drug offense. In our view, an immediate legislative fix is warranted so that this legislation achieves its laudable goals.[6]

{¶ 36} For the foregoing reasons, Melms' assigned error is overruled, and the judgment of the trial court is affirmed.


TUCKER, J., concurs.

FROELICH, J., concurring:

---

[5] A survey by this Court of thirty-nine other states with similar statutes establishes none have this time limit.

[6] We take judicial notice of the fact that at least some jurisdictions are requiring law enforcement to advise overdose victims about the availability of immunity from prosecution. New Carlisle News, "Prosecutor Wilson Advises Law Enforcement on 'Good Samaritan Law' " (March 19, 2017) www.newcarlislenews.net/index.php/local-government/clark-county/2840-prosecutor-wilson-advises-law-enforcement-on-good-samaritan-law (accessed February 16, 2018).

{¶ 37} On this record, where the Appellant was arrested and incarcerated on unrelated charges and warrants and there is no indication of his requesting or seeking a screening for treatment within the 30 days, I concur in the affirmance.

. . . . . . . . . . . . .

Copies mailed to:

Dylan Smearcheck
Angelina Jackson
Hon. Barbara P. Gorman