[Cite as *State v. Hagen*, 2018-Ohio-4045.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-2 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-60 |
| | : | |
| BOBBY LEE HAGEN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of October, 2018.

. . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Champaign County Prosecutor's Office, Appellate Division, 200 N. Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

ANDREW C. SCHLUETER, Atty. Reg. No. 0086701, P.O. Box 96, Xenia, Ohio 45385
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Bobby Lee Hagen appeals from a judgment of the Champaign County Common Pleas Court that sentenced him to an aggregate sentence of 24 months on convictions for one count of failure to appear, two counts of drug possession, and one count of unauthorized use of a motor vehicle. The judgment of the trial court will be affirmed.

### Factual Background and Procedural History

{¶ 2} On February 27, 2017, Officer Michael Hughes of the Urbana Police Division was dispatched to a location within the city in response to a report of a person slumped over the steering wheel of a car. Arriving at that location at approximately 11:00 a.m., Officer Hughes saw Hagen in the driver's seat of a parked car with the engine running. Emergency medical service personnel ("EMTs") who responded at about the same time knocked on the car door, asking if Hagen was alright. Hagen immediately turned off the engine, exited the car, told the EMTs he was fine, and began to walk to the house adjacent to where the car was parked. Officer Hughes then approached Hagen, who continued to assure both the EMTs and Officer Hughes that he "was not having any medical issues" and did not need medical assistance. Hagen told Officer Hughes that he fell asleep in the car at about 4:00 a.m. after giving a friend a ride to the address where the car was parked.

{¶ 3} According to Officer Hughes, he asked Hagen about "needle marks" he noticed on Hagen's arm. Hagen responded that he recently had been hospitalized, and he denied recently using any drugs other than marijuana. Based on his past experience witnessing some 75 to 100 overdoses, Officer Hughes did not believe that Hagen was experiencing an overdose. He said that Hagen seemed "a little bit nervous" but coherent.

Hagen did not exhibit the lethargy, slow speech, or slow breathing that Officer Hughes said he would expect from a person who was overdosing.

{¶ 4} Hagen told Officer Hughes that he had obtained the car in which he was seated "from a guy in Springfield" he knew as "BD," but said he did not know BD's real name or to whom the car belonged. Through dispatch, Officer Hughes requested a registration check on the vehicle. The results of that check indicated that the car was registered "to a lady in her 60s out of Springfield." Reached later, that owner denied knowing Hagen and said that Hagen did not have permission to use her vehicle.

{¶ 5} Due to Hagen's uncertainty about the car's ownership, his needle marks, and Officer Hughes's familiarity with the adjacent residence as the site of suspected drug activity, Officer Hughes asked Hagen's permission to look inside the vehicle. The officer testified that Hagen said the car was not his, but Hughes could look inside. Through the rear window on the driver's side, Officer Hughes saw "a small, red plastic baggy" that he recognized as a type often used to transport drugs. He opened the driver's door and smelled "burnt marijuana." Proceeding to search the vehicle, Officer Hughes found a plastic bag containing a used syringe under the driver's seat and two dollar bills containing "a tannish white residue" between the driver's seat and the center console. Additionally, Officer Hughes found "burnt marijuana roaches" in the ashtray, "a couple of bottle caps that appeared to have drug residue on them," and a "small white piece of hard substance" behind the driver's seat, next to the small baggy.

{¶ 6} Officer Hughes placed Hagen under arrest. Searching Hagen's person, he found "a plastic wrapper * * * wrapped up inside a white paper towel or some type of napkin," enclosing "white hard substances" that Hagen identified as heroin. A backpack

found in the car's backseat and later determined to belong to Hagen contained "some broken glass smoking pipes, a plunger to a syringe, and a cotton (sic) with residue in it."

{¶ 7} Having declined medical treatment, Hagen was transported to the Urbana police station, where he was questioned by Sergeant David Reese. Sergeant Reese testified that after he administered *Miranda* warnings, Hagen confirmed that the backpack in the car was his and that he had been using cocaine and heroin the previous night. Hagen told Sergeant Reese that he "wasn't overdosing," he "was just tired." Sergeant Reese saw nothing "physically" to indicate that Hagen recently had been using opioids and did not recall witnessing "any signs of an overdose at all." Specifically, Sergeant Reese testified that Hagen was coherent and responsive, with no evidence of impaired speech or constricted, non-reactive pupils.

{¶ 8} On April 6, 2017, Hagen was indicted by a Champaign County grand jury on one fifth-degree felony count of possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(a), one fifth-degree felony count of possession of heroin in violation of R.C. 2925.11(A)(C)(6)(a), three fifth-degree felony counts of aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(a), one minor misdemeanor count of possession of marijuana in violation of R.C. 2925.11(A)(C)(3)(a), one second-degree misdemeanor count of possessing drug abuse instruments in violation of R.C. 2925.12(A)(C), with a forfeiture specification, one fourth-degree misdemeanor count of illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1)(F)(1), with a forfeiture specification, and one first-degree misdemeanor count of unauthorized use of a vehicle in violation of R.C. 2913.03(A)(D)(2).

{¶ 9} Hagen was released from custody on his own recognizance, under house

arrest and with electronic monitoring, pending trial. When he failed to appear as required for a May 26, 2017 scheduling conference, however, the trial court issued a capias. The journal entry filed on that date states that on May 24, 2017, Hagen failed to travel to his designated house arrest location in Urbana, Ohio, "and instead traveled to Springfield where[ ] he cut off his electronic monitor." The monitor later was recovered from a dumpster. As a result of those actions, Hagen was indicted in Champaign County on an additional fourth-degree felony count of failure to appear and fifth-degree felony count of vandalism.

{¶ 10} Hagen did not return to Champaign County for arraignment on the two additional charges until October 2, 2017.[1] He initially pled not guilty to all charges. His attorney then filed a combined demand for immunity and motion to suppress evidence, arguing in part that because Hagen "overdosed on the evening of February 26, 2017," he was a "Qualified Individual" under R.C. 2925.11(B)(2)(a)(viii) and immune from prosecution on the drug-related charges.

{¶ 11} During a hearing held on that motion, Hagen testified that he "overdosed" the night before his arrest by injecting "heroin * * * and Fentanyl and whatever else was in it" once or twice between 3:30 a.m. and when EMTs awakened him. He remembered driving some friends home and then "us[ing]" in the parked car before losing consciousness. According to Hagen, a friend of his called 911 at around 10:00 a.m. after she tried to awaken him and he became "real belligerent with her[,] telling her to leave me

---

[1] At his later sentencing hearing, Hagen admitted that after cutting off his ankle monitor, he "started using drugs again[,] obviously." He indicated that he nevertheless turned himself in to the Springfield Police Department on May 27, 2017, but was held in Clark County during the intervening period on charges pending against him there.

alone." He regained consciousness when EMTs approached, and "got up and walked away" because he was "scared" and "didn't want to get in trouble." He admitted to refusing medical treatment, but claimed that the friend who called 911 was seeking medical assistance on his behalf. He also testified that he sought treatment at McCauley House soon after he was released from custody.

{¶ 12} Hagen denied that he gave Officer Hughes permission to search the interior of the subject vehicle. He claimed to have told Officer Hughes that Hughes could "visually inspect it" but not "go in it," because the car did not belong to Hagen and he didn't want the police "tearing it up." Hagen admitted that he did not know the car's owner or have her permission to drive her vehicle, but said the owner's boyfriend had permitted Hagen to use the car. He also admitted that he did not have a valid driver's license.

{¶ 13} Hagen testified that he had overdosed on opiates "[m]ore than ten" times during 2017, beginning with this incident, but that not all of those overdoses resulted in hospitalization. He was hospitalized only when "they were unable to wake me" and he "actually needed several do[s]es of Narcan." Other times, "where maybe I had used just a little bit too much," Hagen said he was able to "talk my way out of it or walk away from it once I woke up." He confirmed that he chose not to get medical treatment on the occasions when Narcan was not used.

{¶ 14} Based on the evidence presented, the trial court denied Hagen's motions for immunity and to suppress. The court found expressly that Officer Hughes's testimony was more credible than Hagen's. Additionally, the trial court observed that Hagen failed to present the testimony of the purported 911 caller to support his claim that a friend of his placed the call after determining that Hagen needed medical assistance.

**{¶ 15}** The trial court noted that Hagen claimed to have been sleeping when Officer Hughes approached him, that he "exhibited no physical signs of controlled substance overdose," and that no laboratory test results were presented to confirm the presence of drugs in his body. The court further stated:

Even presuming that the response to the scene was the result of [a] 9-1-1 call, the circumstances of [Hagen's] interaction with responding EMS personnel and law enforcement personnel gave no indication that [Hagen] had been in medical distress, was in medical distress or was even recovering from medical distress due to the use of a controlled substance.

**{¶ 16}** The trial court determined that any "medical incident" preceding Hagen's arrest was "completed" before Officer Hughes sought and obtained Hagen's consent to search the vehicle, and that the evidence supporting the drug possession charges against Hagen thus was discovered as a result not of "sought medical assistance," but of a consensual search. For that reason, the court concluded that R.C. 2925.11(B)(2)(b)'s provisions did not apply.

**{¶ 17}** On December 18, 2017, Hagen entered a plea of no contest to two counts of drug possession and a plea of guilty to the counts of unauthorized use of a motor vehicle and failure to appear. All remaining counts and related specifications were dismissed.

**{¶ 18}** At Hagen's January 11, 2018 sentencing, the State remarked on the "extensive history of felony/misdemeanor conduct and delinquent adjudications" included in Hagen's presentence investigation report ("PSI"). Defense counsel also acknowledged Hagen's "long record," including "his past history of theft offenses." The trial court further

observed that another PSI prepared for an earlier case[2] against Hagen contained a "more exhaustive" criminal history with additional felonies, including a 2009 escape conviction combined with a receiving stolen property offense in Clark County.

{¶ 19} The court noted that in Hagen's 2013 case for theft and failure to appear, it sentenced Hagen to a drug treatment facility despite his earlier escape conviction. Hagen admitted that he lost that opportunity because he was caught smoking marijuana while in jail, causing the court to revoke his community control and send him to prison. Based on Hagen's "multiple failures to appear," his escape offense, and his past bond violations, the trial court sentenced Hagen to 18 months of imprisonment on the failure to appear offense and to six months on each of the remaining offenses, with the latter three sentences to run concurrently with each other, but consecutive to the sentence for failure to appear, for a total sentence of 24 months.

{¶ 20} Hagen appeals from that judgment, setting forth a single assignment of error:

> The trial court erred when it denied [Hagen's] pretrial motion to dismiss the indicted minor drug possession offenses pursuant to R.C. 2925.11(B)(2)(b).

### *Standard of Review*

{¶ 21} We review a trial court's decision on a motion to dismiss an indictment pursuant to a de novo standard of review. *State v. Cassel*, 2016-Ohio-3479, 66 N.E.3d 318, ¶ 15 (2d Dist.), citing *State v. Gaines,* 193 Ohio App.3d 260, 2011-Ohio-1475, 951 N.E.2d 814, ¶ 14 (12th Dist.). "De novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *Id.*, quoting *State*

---

[2] The trial court identified the earlier case as "2013 CR 294."

*v. Clay,* 2d Dist. Miami No. 2015-CA-17, 2016-Ohio-424, ¶ 5. However, we defer to the credibility assessments of trial courts able to observe the witnesses' demeanor while testifying. *See State v. Hawkins*, 2d Dist. Montgomery No. 27019, 2018-Ohio-867, ¶ 38.

{¶ 22} Hagen's demand for immunity under R.C. 2925.11(B)(2)(b) was the equivalent of a motion to dismiss the drug possession charges against him, to which de novo review applies. *See State v. Melms*, 2018-Ohio-1947, 101 N.E.3d 747, ¶ 4, ¶ 24 (2d Dist.).

### *Immunity under R.C. 2925.11(B)(2)(b)*

{¶ 23} After reviewing the record, we conclude that Hagen was not immune under R.C. 2925.11(B)(2)(b)'s provisions from the drug possession offenses with which he was charged. That statute provides in pertinent part as follows:

(b) Subject to division (B)(2)(f) of this section, a *qualified individual* shall not be arrested, charged, prosecuted, convicted, or penalized pursuant to this chapter for a minor drug possession offense *if all of the following apply*:

(i) *The evidence* of the obtaining, possession, or use of the controlled substance or controlled substance analog *that would be the basis of the offense was obtained as a result of the qualified individual* seeking the medical assistance or *experiencing an overdose and needing medical assistance*.

(ii) Subject to division (B)(2)(g) of this section, within thirty days after seeking or obtaining the medical assistance, the qualified individual seeks and obtains a screening and receives a referral for treatment from a community addiction services provider or a properly

credentialed addiction treatment professional.

(iii) Subject to division (B)(2)(g) of this section, the qualified individual who obtains a screening and receives a referral for treatment under division (B)(2)(b)(ii) of this section, upon the request of any prosecuting attorney, submits documentation to the prosecuting attorney that verifies that the qualified individual satisfied the requirements of that division. The documentation shall be limited to the date and time of the screening obtained and referral received.

(Emphasis added.)

**{¶ 24}** R.C. 2925.11(B)(2)(a) defines the relevant terms above as follows:

(iv) "Minor drug possession offense" means a violation of this section that is a misdemeanor or a felony of the fifth degree.

* * *

(viii) "*Qualified individual" means* a person who is not on community control or post-release control and is a person acting in good faith who seeks or obtains medical assistance for another person who is experiencing a drug overdose, a person who experiences a drug overdose and who seeks medical assistance for that overdose, or *a person who is the subject of another person seeking or obtaining medical assistance for that overdose as described in division (B)(2)(b) of this section*.

(ix) "Seek or obtain medical assistance" includes, but is not limited to making a 9-1-1 call, contacting in person or by telephone call an on-duty peace officer, or transporting or presenting a person to a health care facility.

(Emphasis added.)

{¶ 25} Without dispute, Hagen satisfies some of the criteria necessary to qualify for immunity from prosecution for the drug possession offenses to which he entered no contest pleas. The State apparently concedes that Hagen was not on community control or post-release control at time of the subject offenses, *see* R.C. 2925.11(B)(2)(a)(viii), and that he sought and obtained a screening and received a referral for treatment from a community addiction services provider or a properly credentialed addiction treatment professional within 30 days after the incident that gave rise to his arrest. *See* R.C. 2925.11(B)(2)(b)(ii).

{¶ 26} Nevertheless, Hagen has not met other conditions essential to qualify for relief under R.C. 2925.11(B)(2)(b). Specifically, the record compels a conclusion that the evidence on which Hagen's drug possession charges were premised was *not* acquired as a result of Hagen's "experiencing an overdose and needing medical assistance." *See* R.C. 2925.11(B)(2)(b)(i).

{¶ 27} The sole evidence suggesting that Hagen "experienc[ed] an overdose" is Hagen's own hearing testimony that he overdosed some time during the morning hours of February 27, 2017. *See id.* His testimony to that effect was controverted, however, by the testimony of Officer Hughes and Sergeant Reese. Both testified that they had extensive experience with overdose victims and that they observed no physiological signs of overdose during their conversations with Hagen on February 27. The trial court credited Officer Hughes's testimony on that issue, and later specifically found Officer Hughes's testimony to be more credible than that of Hagen. We defer to that credibility assessment. *See Hawkins*, 2d Dist. Montgomery No. 27019, 2018-Ohio-867, at ¶ 38.

{¶ 28} Additionally, on the date of his arrest, Hagen repeatedly denied having experienced an overdose, telling both Officer Hughes and Sergeant Reese that he simply was tired and had fallen asleep. Hagen's statements at that time were consistent with both officers' personal observations. The record does not establish that Hagen experienced an overdose during the relevant time frame.

{¶ 29} Even were we to accept Hagen's uncorroborated claim to have overdosed on the morning of February 27, 2017, however, the record before us does not support a conclusion that Hagen "need[ed] medical assistance" as a result of any such overdose. *See* R.C. 2925.11(B)(2)(b)(i). Significantly, on the date of his arrest, Hagen affirmatively declined all offers of medical assistance and received no medical treatment of any kind. Although Hagen later claimed that a friend of his had called 911 to obtain medical assistance for him when he did not respond to her attempts to rouse him,[3] he offered no objective evidence to substantiate his claim to that effect.

{¶ 30} Given that Hagen was able to walk from the car and cogently respond to police questioning without the benefit of any form of medical intervention, he has not demonstrated that he "needed" medical assistance as a result of whatever quantity of drugs he may have injected prior to the search of the vehicle in which he had been found. The mere fact that an ambulance was sent to the scene in response to what the dispatcher surmised might have been a medical incident does not establish that Hagen "need[ed] medical assistance" for purposes of R.C. 2925.11(B)(2)(b)(i). Although Hagen asserts that he was "the subject of another person seeking or obtaining medical

---

[3] Indeed, during the hearing, Hagen even advised the trial court that his friend told Hagen she had administered Narcan to him, to no avail, but the trial court apparently disregarded that statement.

assistance for [an] overdose" Hagen experienced, *see* R.C. 2925.11(B)(2)(a)(viii), that assertion, even if proven, would not entitle him to immunity absent additional proof that he actually "*need[ed]* medical assistance." *See* R.C. 2925.11(B)(2)(b)(i).

{¶ 31} Finally, the trial court's credibility assessments lead to the conclusion that the evidence underlying Hagen's drug possession charges was obtained not as a result of Hagen's overdosing or needing medical assistance, but instead as a product of Hagen's consent to Officer Hughes's search of the vehicle. Again, we defer to the trial court's finding that Officer Hughes's testimony regarding Hagen's consent to the vehicle search was more credible than Hagen's denial that he consented. *See Hawkins*, 2d Dist. Montgomery No. 27019, 2018-Ohio-867, at ¶ 38. Like the trial court, we conclude that any possible "medical incident" inferable from the circumstances surrounding Hagen's arrest had been resolved or "terminated" before Officer Hughes sought Hagen's consent to the vehicle search. Consequently, Hagen was not entitled to the protection afforded by R.C. 2925.11(B)(2)(b), and his single assignment of error is overruled.

### *Conclusion*

{¶ 32} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Jane A. Napier
Andrew C. Schlueter
Hon. Nick A. Selvaggio